IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE:                          §
                                §
GEORGE R. NEELY,                §
                                §
           Debtor,              §
_____       §
                                §
GEORGE R. NEELY,                §
                                §
           Appellant,           §
                                §
v.                              §    CIVIL ACTION NOS. H-05-2796
                                §        and H-05-3299
W. STEVE SMITH, TRUSTEE         §
                                §
           Appellee.            §

## MEMORANDUM OPINION AND ORDER

Appellant, George R. Neely, appeals two interlocutory orders of the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  The first order, dated July 12, 2005, denied his § 706(a) motion to convert from a Chapter 7 to a Chapter 13 bankruptcy.  The second order, dated September 1, 2005, withdrew the first order, granted Neely's § 706(a) motion to convert from a Chapter 7 to a Chapter 13, and then immediately reconverted his case to a Chapter 7 case.  For the reasons set forth below, the orders of the bankruptcy court will be vacated and the case remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I.  **Background**

On October 19, 2004, Neely filed for relief under Chapter 7 of the Bankruptcy Code.[1]  He timely filed his Schedules and Statement of Financial Affairs.[2]  On April 27, 2005, he filed a motion to convert his Chapter 7 case to a Chapter 13 case.[3]  The trustee filed an objection to the debtor's motion to convert.[4]  After additional pleadings on the matter were submitted, the bankruptcy court held a hearing on the motion to convert on June 21, 2005.[5]

At the hearing the bankruptcy court heard testimony and argument from the trustee, W. Steve Smith, an attorney representing Mary Ann Knesek,[6] a former client of Neely's suing Neely in state court for malpractice, and from Neely's attorney.[7]  The court converted the case to a Chapter 13 case, and considered the

---

[1]Docket Entry No. 1 in Bankruptcy Case No. 04-44898, contained in Designation of Record and Statement of Issues on Appeal, Appendix, Exhibit 16, Docket Entry No. 2.

[2]Id. at Docket Entry Nos. 4-6.

[3]Id. at Docket Entry No. 73.

[4]Id. at Docket Entry No. 77.

[5]Id. at Docket Entry No. 85.

[6]The Record uses the spelling "Knesek."  In the September 1, 2005, Order the name is spelled "Knezek."

[7]Record of Hearing, contained in Designation of Record and Statement of Issues on Appeal, Appendix, Exhibit 6, Docket Entry No. 2.  The court will hereinafter refer to this document as "Record."

trustee's objections as a motion to reconvert to a Chapter 7. (Record, p. 32)

The bankruptcy court then reviewed the evidence presented and made several findings. (Record, pp. 32-39) Neely, an attorney, had filed for bankruptcy three times before his current filing. (Record, pp. 33-35) He first filed for Chapter 11 bankruptcy in the Houston Division of this court in 1989. (Record, pp. 33-34) The case was converted to Chapter 7 and Smith was appointed trustee. Id. There were a number of complaints filed against Neely in that case. Id. Smith filed a number of show cause proceedings against Neely. (Record, p. 34) Smith sued Neely for an accounting of property. Id. There were a number of adversarial proceedings conducted by the bankruptcy court in 1994 and a number of enforcement orders. Id. Although there was no general denial of discharge, there were several denials of discharge with respect to specific adversarial proceedings. Id.

Neely's second bankruptcy petition was filed in 1996 in the Victoria Division of this court. (Record, p. 33) Neely was granted a no asset discharge in June of 1996, with a final decree entered in May of 1997. Id. In late 1996 Neely filed yet another bankruptcy petition, this time a Chapter 13 petition, in the Houston Division. (Record, pp. 34-35) The trustee in the third case moved to dismiss or convert the case to a Chapter 7 case. (Record, p. 35) The case was eventually dismissed, and the

-3-

bankruptcy judge instructed the debtor that if he filed again, he should do so in the Southern District of Texas and have the case transferred to her court.  Id.  Neely sought to reinstate the case, but no further action was taken after a hearing on the matter.  Id.

The bankruptcy court then made findings about the history of Neely's current bankruptcy case. (Record, pp. 35-37)  Neely filed the instant case pro se on October 19, 2004, but later retained an attorney. (Record, pp. 35-36)  Neely filed a motion to dismiss on March 30, 2005, which the court denied.  (Record, p. 36)  Neely then filed a § 706(a) motion to convert to Chapter 13 on April 27, 2005.  (Record, p. 37)

The bankruptcy court recounted several instances of questionable conduct by Neely during his latest bankruptcy, beginning with allegations by Smith that the court found essentially undisputed by the evidence. (Record, p. 32).  Smith, who had also served as Neely's trustee in the 1989 bankruptcy, testified that Neely used bankruptcy as a way to avoid his obligations as a debtor.[8]  Smith noted several irregularities in Neely's schedules. (Record, pp. 37-38).  Neely was trustee of a children's trust at the time of the bankruptcy but did not disclose

---

[8]Smith testified that when serving as a trustee during Neely's first bankruptcy, "I spent virtually all of my time . . . unwinding and freeing former clients of Mr. Neely from contingent fee arrangements that he had initially abandoned.  When picked up by other counsel and that other counsel succeeded he would intervene and sue everybody."  (Record, p. 7)

the trust on his initial schedules.  (Record, p. 37)  Furthermore, either pre- or just post-petition, Neely sold trust property to another attorney with whom he was associated.   Id.

Smith had also sought a list of properties allegedly owned by Neely's wife, which Neely characterized as her separate property. (Record, pp. 37-38)  When questioned under oath Neely admitted that part of his money was used to purchase his wife's separate property.  (Record, p. 37)  However, Neely refused to provide the trustee with records pertaining to the monies used.  (Record, pp. 37-38)  Neely has also failed to disclose any records pertaining to the status of the children's trust.  (Record, p. 37)[9]

_____

[9]The trustee testified to several matters regarding the debtor's alleged concealment of property.  (Record, pp. 7-9)  The trustee testified that the debtor had appeared at only two of the four 341 meetings scheduled, although apparently Neely's attorney had notified the trustee in advance that Neely would not be able to attend.  (Record, pp. 7-8, 13-14)  At the second 341 meeting where Neely was present, the trustee requested information pertaining to a children's trust.   The trustee stated that Neely initially claimed not to know who the trustee was, then stated it was a Cheyenne Trust.   The trustee stated that Neely was in fact the trustee of the children's trust as of the commencement of the bankruptcy and did not disclose this in any of his pleadings.

The trustee also stated that Neely sold a building allegedly owned by the trust, either pre- or just post-petition, to an attorney with whom Neely shares office space.  At the second 341 meeting the trustee requested a listing of all assets owned by Neely's wife, which Neely failed to produce.   When the trustee questioned Neely under oath, Neely admitted that part of the money used to purchase property he claims as his wife's separate property came from Neely.  The trustee requested documentation and a date for a Rule 2004 examination.  The trustee alleges that in response to these requests Neely filed the motion to convert.

With respect to Neely's eligibility for and ability to fund a Chapter 13, the bankruptcy court noted that Neely was suspended from the practice of law, and no evidence was introduced about his ability to fund a Chapter 13.  (Record, p. 38)[10]  The court also noted the trustee's contention that Neely improperly listed a number of creditors as contingent, unliquidated, and disputed to avoid exceeding the monetary limits of a Chapter 13 bankruptcy. Id.[11]  One allegation bearing on this came from Neely's former client, Knesek.  Id.  Knesek alleged a myriad of misdeeds by Neely, but the only relevant allegation was that Neely tried to delay the lawsuit she had filed against him in state court.  Delaying the state court litigation would cause the state court case to remain unliquidated, and help Neely remain under the monetary ceiling of debt for a Chapter 13.  Id.[12]

The bankruptcy court held that these findings were sufficient to constitute extreme circumstances and justified a reconversion of the case back to a Chapter 7.  (Record, p. 39)  The bankruptcy

---

[10]This is not completely accurate.  During the hearing Neely's attorney stated that Neely was employed as a paralegal, but offered no documentary evidence to support the statement.  (Record, p. 13)

[11]This contention was, as the bankruptcy court noted, largely unsupported by evidence.  (Record, p. 38)

[12]The court relies on the bankruptcy court's determination of the relevance of the testimony by Knesek's attorney.  This court did not find the record of the attorney's testimony particularly relevant.  (Record, pp. 20-29)

-6-

court found that the case presented numerous examples of Neely's prior and current actions in avoiding his responsibility to pay his debts, including filing a Chapter 7 case and later filing a Chapter 13 case, which he did not bring to fruition to pay his creditors.  Id.  The bankruptcy court further noted that Neely failed to follow its previous instructions to file any future bankruptcies in her court.  Id.

## II.  Standard of Review

The court reviews findings of fact by the bankruptcy court under the clearly erroneous standard and reviews issues of law and mixed questions of law and fact de novo.  In re Universal Seismic Associates, Inc., 288 F.3d 205, 207 (5th Cir. 2002).

## III.  Issue on Appeal

Neely argues that the bankruptcy court erred in granting Neely's motion to convert the Chapter 7 case to a Chapter 13 case and immediately reconverting the case to Chapter 7 and in making the underlying determination that "extreme circumstances" existed.

This appeal raises two questions.  First, does 11 U.S.C. § 706(a) give a debtor an absolute right to convert from a Chapter 7 case to a Chapter 13 case?  If not, then the court must determine whether the facts in this case are sufficient to constitute "extreme circumstances" warranting denial of conversion to Chapter 13.

-7-

### IV.  <u>Analysis</u>

Neely argues on appeal that the § 706(a) right to convert to a Chapter 13 is absolute.  He also argues that the dual conversions, with the bankruptcy court granting the conversion to Chapter 13, but then <u>sua sponte</u> converting the case back to Chapter 7, did not comply with the procedural requirements of the Bankruptcy Code.

The record of the hearing reflects that the bankruptcy court, despite initially granting the conversion, immediately reconverted the case to Chapter 7 based on the legal standard articulated by the Fifth Circuit for denying a debtor conversion from Chapter 7 to Chapter 13.[13]  The bankruptcy court then entered an order denying the Motion to Convert to Chapter 13 on July 12, 2005.[14]  Neely appealed this order.[15]  The trustee filed a motion for relief from the order on July 30, 2005, which Neely opposed on jurisdictional

---

[13]The bankruptcy court used the phrase "extreme circumstances" in its <u>sua sponte</u> reconversion to Chapter 7.  (Record, p. 32)  As discussed below, this is the criteria used by the Fifth Circuit to explain when denial of a debtor's conversion from Chapter 7 to Chapter 13 might be justified.  <u>See</u> <u>In re Martin</u>, 880 F.2d 857, 859 n.2 (5th Cir. 1989).

[14]Order, contained in Designation of Record and Statement of Issues on Appeal, Appendix, Exhibit 7, Docket Entry No. 2.

[15]Notice of Appeal, contained in Designation of Record and Statement of Issues on Appeal, Appendix, Exhibit 8, Docket Entry No. 2.

grounds.[16]  The bankruptcy court granted the motion for relief, withdrawing the first order and entering an amended order that accurately reflected its holding at the hearing.[17]  The second order, dated September 1, 2005, granted the conversion from Chapter 7 to Chapter 13, and also ordered that the case be reconverted from Chapter 13 to Chapter 7.  Id.  Neely also appealed the second order.[18] As a result of the second order, the appeal from the first order was dismissed as moot, but reopened upon Neely's motion.[19] Both appeals are now pending before this court.

Although the bankruptcy court ostensibly granted the motion to convert in its September 1, 2005 order, and then reconverted the case in the same order, the court will not undertake an extensive examination of this procedural device as a means of circumventing 11 U.S.C. § 706(a) for several reasons.  First, in citing "extreme circumstances" the bankruptcy court used the legal standard for denying conversion in granting the reconversion.  Second, the bankruptcy court did not comply with the procedural requirements of

---

[16]Debtor's Objection to the Trustee's Motion for Relief from Order, contained in Designation of Record and Statement of Issues on Appeal, Appendix, Exhibit 11, Docket Entry No. 2.

[17]Amended Order, contained in Designation of Record and Statement of Issues on Appeal, Appendix, Exhibit 12, Docket Entry No. 2.

[18]Notice of Appeal, Docket Entry No. 1.

[19]Order Granting Motion to Amend Final Judgment, Civil Case 4:05-cv-02796, Docket Entry No. 9.

notice and a hearing for reconversion under 11 U.S.C. § 1307.[20]  The notice and hearing were held regarding the debtor's motion to convert from Chapter 7 to Chapter 13, not reconversion, which the bankruptcy court fashioned as a remedy during the hearing.[21] Finally, the practical effect of the bankruptcy court's two orders and the immediate reconversion was to deny Neely's § 706(a) motion for conversion from Chapter 7 to Chapter 13.  Therefore, this court will treat the bankruptcy court's ruling as denying the § 706(a) motion to convert from Chapter 7 to Chapter 13, and address the propriety of that denial.

---

[20]Neely argues that 11 U.S.C. § 1307(c), which governs conversions from Chapter 13 to Chapter 7, requires notice and a hearing as defined in 11 U.S.C. § 102(1).  Procedurally, Neely states that Bankruptcy Rule 1017(f)(1) treats the proceeding for this type of conversion as a contested matter governed by Bankruptcy Rule 9014 and Local Bankruptcy Rule 9013.  Neely also argues that based on the evidence presented, the bankruptcy court lacked the substantive grounds to sua sponte reconvert to Chapter 7.  See Brief for Appellant, pp. 8-9, Docket Entry No. 4. The court agrees with Neely to the extent that the procedures for reconversion were not followed.  However, since the court has determined that the effect of the bankruptcy court's orders was to deny the conversion to Chapter 13, it is unnecessary to further address the argument.

[21]The record makes it clear that in deciding to grant the debtor's motion to convert, then immediately reconverting the case, the bankruptcy court was trying to comply with Fifth Circuit precedent while protecting its right to ensure the integrity of the bankruptcy process.  (Record, p. 32)  Furthermore, by converting and then immediately reconverting, the bankruptcy court was apparently following dicta of a district court opinion suggesting this procedure.  See Pequeno v. Schmidt, 307 B.R. 568, 580 (S.D. Tex. 2004).

**A.    Right to Convert**

The bankruptcy court's interpretation of § 706(a) is a question of law, which the court reviews de novo.  This section of the Bankruptcy Code provides a debtor the right to convert from Chapter 7 to Chapter 13:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.  Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

This provision was at issue in In re Martin, 880 F.2d 857 (5th Cir. 1989).  The debtor in Martin was granted a Chapter 7 discharge.  The day after the discharge was granted the debtor's ex-husband offered to purchase the bankruptcy estate's interest in formerly community-owned real and personal property.  Id. at 858. The trustee filed an application for authority to sell the property to the debtor's former husband.  Id.  The debtor then filed an application to convert the case to a Chapter 13, with a plan to repay one hundred percent of her debts.  Id.  The debtor's ex-husband objected to the conversion, and the bankruptcy court denied the motion to convert.  Id.  The district court reversed the bankruptcy court, and the Fifth Circuit affirmed the district court.  Id.  The issue on appeal was whether the bankruptcy court

-11-

properly denied the debtor's motion to convert from Chapter 7 to Chapter 13 under § 706(a) of the Bankruptcy Code.  Id.

The Fifth Circuit held that the bankruptcy court's denial of the conversion was improper.  Id. at 860.  The court examined § 706(a) and its legislative history and determined that "Congress intended to encourage such conversions and to give the debtor an absolute one-time right to convert[.]"  Id. at 859.  However, the court's opinion also indicated that a debtor's right to convert is not completely unfettered.  The court noted that some cases have blocked conversions, but only in "extreme circumstances."  Id. at 859 n.2.  The court stated that "the cases also support our conclu-sion that a debtor's right to convert under section 706(a) is, as indicated by the state and its legislative history, an absolute one.  The courts refuse to interfere with that right in the absence of extreme circumstances."  Id. at 859.  The court then affirmed the district court because the debtor's former husband "does not allege facts which if true would provide an adequate ground to deny the debtor's motion to convert."  Id.

Although the language of Martin seems contradictory, with the "absolute right" holding warring with the dicta about "extreme circumstance," the opinion can be read harmoniously.  A debtor's right to convert is absolute, but only in the absence of extreme circumstances sufficient to deny the conversion.  The court's holding supports this proposition, since the court stated that

-12-

there were no facts alleged "which if true would provide an adequate ground to deny the debtor's motion to convert." <u>Id.</u>  The court's language leaves open the possibility that sufficient facts could exist to justify denying the conversion, in an "extreme circumstance." <u>Id.</u>

Since <u>Martin</u> the Fifth Circuit has not revisited this issue, except in an unreported case.  <u>See</u> <u>In re Pequeno</u>, 126 Fed. Appx. 158 (5th Cir. 2005) (not selected for publication).  The Fifth Circuit's decision in <u>Pequeno</u> affirmed the district court's determination that the debtor had the right to convert from Chapter 7 to Chapter 13.  <u>Id.</u> at 163.  The district court in <u>Pequeno</u> wrestled with the contradictory language in <u>Martin</u>. <u>Pequeno v. Schmidt</u>, 307 B.R. 568, 574-76 (S.D. Tex. 2004).  The district court concluded that <u>Martin</u> did not recognize any exceptions to a debtor's absolute right to convert from Chapter 7 to Chapter 13.  <u>Id.</u> at 580.  The Fifth Circuit's unpublished opinion affirming <u>Pequeno</u> approves of the district court's interpretation of <u>Martin</u>.  <u>Pequeno</u>, 126 Fed. Appx. at 162-63.  The effect of this approval is limited, however, by the court's statement that even if the right to convert were not absolute, the exceptional circumstances contemplated in <u>Martin</u> were not present in <u>Pequeno</u>.  <u>Id.</u>

Courts in the Fifth Circuit and other circuits have interpreted <u>Martin</u> in conflicting ways.  <u>Compare</u> <u>In re Copper</u>, 426

-13-

F.3d 810, 814 (6th Cir. 2005), <u>and</u> <u>In re Porras</u>, 188 B.R. 375, 377-
78 (Bankr. W.D. Tex. 1995) (both citing <u>Martin</u> for the proposition
that the debtor has an absolute right to convert from Chapter 13 to
Chapter 7), <u>with</u> <u>In re Marrama</u>, --- F.3d ---, 2005 WL 2840634 at *3
(1st Cir. 2005) (citing <u>Martin</u> for the proposition that the
debtor's first-time right to convert from Chapter 13 to Chapter 7
is subject to exceptional circumstances).

There is also a split of authority on the basic question of
whether a debtor has an absolute and unfettered right to convert.
Some courts hold that a debtor may use § 706(a) to convert when the
statutory prerequisites are met, regardless of circumstances such
as bad faith. <u>See, e.g.</u>, <u>In re Croston</u>, 313 B.R. 447 (9th Cir. BAP
2004); <u>Pequeno v. Schmidt</u>, 307 B.R. 568 (S.D. Tex. 2004); <u>In re
Miller</u>, 303 B.R. 471 (10th Cir. BAP 2003); <u>In re Porras</u>, 188 B.R.
375 (Bank. W.D. Tex. 1995). Other courts have found that a
bankruptcy court may deny a debtor's motion for a first-time
conversion from Chapter 7 to Chapter 13 under § 706(a) for various
reasons, including bad faith, abuse of the bankruptcy process, and
an unfeasible Chapter 13 plan. <u>See, e.g.</u>, <u>In re Kuhn</u>, 322 B.R. 377
(Bank. N.D. Ind. 2005); <u>In re Manouchehri</u>, 320 B.R. 880 (Bankr.
N.D. Pa. 2004); <u>In re Ponzini</u>, 277 B.R. 399 (Bankr. E.D. Ark.
2002); <u>In re Young</u>, 269 B.R. 816 (Bankr. W.D. Mo. 2001); <u>In re
Sully</u>, 223 B.R. 582 (Bankr. M.D. Fla. 1998); <u>Martin v. Cox</u>, 213

B.R. 571 (E.D. Ark. 1996).[22]   Having carefully surveyed the
conflicting landscape, this court is persuaded that the analysis
provided by two recent opinions from other circuits help articulate
the appropriate standard for evaluating a debtor's right to
convert.

In Copper, 426 F.3d 810, the evidence established that the
debtor had acted in bad faith during his bankruptcy, telling
"egregious lies" and "swimming around the truth" during adversarial
proceedings.  Id. at 812.  The Sixth Circuit held that a bankruptcy
court could deny the debtor's § 706(a) motion to convert from
Chapter 7 to Chapter 13 for bad faith.  Id. at 817.  The court
concluded that the right to convert is not absolute and that
allowing for exceptions to the right to convert would best prevent
abuse of the bankruptcy system.  Id. at 813-816

The Copper court examined § 706(a) and found that neither the
language of the statute nor the legislative history provides a
debtor the absolute right to convert.  Id. at 816-17.  The court
concluded that the phrase "at any time" in the statute referred to
the debtor's time frame for conversion, and did not mean the debtor
could convert under any circumstances.  Id. at 816.  The court also
noted that by using the word "may" the statute did not remove all

_____

[22]Although there are a substantial number of cases on both
sides of this issue, a review of the cases leads the court to
conclude that recognizing a bankruptcy court's discretion to deny
a § 706(a) motion to convert under limited circumstances is
becoming the majority position.

of the bankruptcy court's discretion.  Id.  It noted that had Congress intended to take away all discretion, it would have used the mandatory "shall."  Id.  The court also analyzed § 706(a) in terms of the stated policy in the legislative history that a debtor should always be given the opportunity to repay his debts and concluded that Copper had no intention of paying his debts.  Id. at 816-17.

In re Marrama involved a debtor who transferred residential property to a revocable spendthrift trust for no consideration, designating himself the sole beneficiary and his girlfriend the sole trustee.  Marrama, 2005 WL 2840634, at *1.  The debtor filed a Chapter 7 petition, but failed to disclose that he was the trust's beneficiary, listed the value of the trust as zero, denied making any property transfers within the preceding year, and falsely asserted that the IRS owed him no tax refunds.  Id.  When the trustee questioned these discrepancies, the debtor sought to convert to a Chapter 13 proceeding based on his claim of having acquired rental income and gainful employment.  Id.  The bankruptcy court refused this conversion, finding that the debtor had demonstrated bad faith.  Id.  The First Circuit agreed with the bankruptcy court and held that § 706(a) permits a bankruptcy court to deny a debtor's motion to convert when the debtor engaged in bad faith conduct.  Id. at *6.

The First Circuit came to this conclusion after an in-depth analysis of the statutory language of § 706(a), the legislative history, its interaction with other sections of the bankruptcy code, and various court opinions. Id. at *2-*6. The First Circuit, like the Sixth, noted the use of the word "may" in § 706(a) and interpreted this as suggesting that the right to convert is merely presumptive. Id. at *3. It looked beyond § 706(a) to § 105(a) of the bankruptcy code, which enables the bankruptcy court to "tak[e] any action or mak[e] any determination necessary or appropriate to . . . prevent an abuse of [the bankruptcy] process." Id. at *2 (quoting 11 U.S.C. § 105(a)). The First Circuit joined the Sixth in stating that "at any time" refers to when the debtor can convert, rather than implying that the debtor can convert regardless of circumstance. Id. at *3. When looking at the word "absolute" as used in the legislative history, the court stated that it "likely constitutes a recognition that the debtor may convert *once* as a matter of course, but may not engage in successive conversions, or that the debtor's right to conversion may not be waived by contract." Id. at *5 (emphasis in original). Implicit in the underlying policy that the debtor should always be given the opportunity to pay his debts, the court stated, is that such an opportunity is to be accorded only to honest debtors. Id.

Although this court is bound by Fifth Circuit precedent, Martin's brief mention of "extreme circumstances," indicating that

facts could exist that would justify denying a debtor's motion for conversion, does not provide the parameters for an exception to a debtor's § 706(a) right to convert from Chapter 7 to Chapter 13. The court finds <u>Copper</u> and <u>Marrama</u> persuasive because they provide a reasoned statutory basis for the existence of an exception mentioned in <u>Martin</u> and they further explain what factual scenarios might constitute "extreme circumstances" sufficient to deny a debtor's § 706(a) motion to convert from Chapter 7 to Chapter 13.

The language of § 706(a) affords a debtor a one-time presumptive right to convert from Chapter 7 to Chapter 13. The issue is whether a debtor may exercise this right so unconditionally that the debtor can act in bad faith, abuse the bankruptcy process, propose a patently unfeasible Chapter 13, and yet still have the right to convert. The court concludes that § 706(a) is not that absolute. By using "may" rather than more mandatory language, such as "shall," the statute creates a strong presumption in favor of conversion. The court agrees with the First and Sixth Circuits that "at any time" as used in the statute refers to when the conversion can take place, not to the circumstances of the conversion.

The stated Congressional intent also supports the conclusion that the statutory right to convert is subject to an exception under a sufficient factual showing. "Subsection (A) of this section gives the debtor the one-time absolute right of conversion

. . . . The policy of the provision is that the debtor should always be given the opportunity to repay his debts . . . ." S.Rep. No. 95-989, at 94 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5880. The Fifth Circuit quoted the "absolute" language in Martin. Martin, 880 F.2d at 859. The Marrama court stated that "absolute" was used to indicate that a debtor may convert one time as a matter of right, but has no right to successive conversions, or that it was an emphasis on the non-waivability of the right by contract. Marrama, 2005 WL 2840634, at *5.

The word "absolute" does not appear in the statute, but in the Congressional history, and the court should gauge its meaning there by reading the entire passage regarding Congressional intent. Refusing to allow conversion for a debtor who seeks to use § 706(a) in bad faith, not as a method of repaying his debts but to abuse the bankruptcy process does not frustrate Congressional intent. A debtor who abuses the bankruptcy process does not further the purpose of debt repayment. There is no indication in either the wording of the statute or the stated purpose that Congress intended to allow conversion when a debtor evinces bad faith.

A requirement of good faith underpins much of the Bankruptcy Code. The code empowers the bankruptcy court to take sua sponte actions to prevent an abuse of the bankruptcy process. 11 U.S.C. § 105(a). In addition, "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard

-19-

of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." Matter of Little Creek Development, 779 F.2d 1068, 1071 (5th Cir. 1986). In construing § 706(a) to allow bankruptcy courts in "extreme circumstances" to refuse a debtor acting in bad faith a first-time conversion from Chapter 7 to Chapter 13, the court adheres to the good faith underpinnings of the code. The language of the statute itself gives merely a presumptive right to convert, and Martin seems to contemplate just such an exception with its reservations that the right to convert exists only absent "extreme circumstances."

**B.    Extreme Circumstances**

Because the Fifth Circuit has not defined "extreme circumstances," the issue of whether the facts of this case are sufficient to meet this standard is a mixed question of law and fact that this court reviews de novo. The court begins by examining Martin to determine what types of debtor conduct could justify denial of a § 706(a) conversion.

The two cases cited by the Martin court as demonstrating extreme circumstances were In re Calder, 93 B.R. 739 (Bankr. D. Utah 1988) and In re Straugh, 41 B.R. 757 (Bankr. W.D. Pa. 1984). The debtor in Calder was a practicing bankruptcy attorney who had filed three Chapter 13 petitions in three years, two of which were dismissed for bad faith, and had made minimal effort to repay his creditors during those seven years. Calder, 93 B.R. at 739-40. In

Straugh the debtor's plan was at issue:  It was not feasible using his best estimate of future income, and was in bad faith because it failed to provide for payment of possibly preferential transfers. Straugh, 41 B.R. at 759.   The facts in Martin itself were not sufficient to justify a denial of conversion.  The debtor in Martin moved to convert her case to a Chapter 13 to prevent her ex-husband from buying the bankruptcy estate's interest in formerly community-owned real and personal property.   Martin, 880 F.2d at 858. Although the two were divorced, they had not yet reached a property settlement.  Id.  There was no finding that the debtor acted in bad faith.  Id.  See also Matter of Martin, 87 B.R. 20 (E.D. La. 1988).

By citing Calder and Straugh as examples of "extreme circumstances" the Fifth Circuit intimated that a finding of extreme circumstances must involve a finding of bad faith on the part of the debtor.  In both Calder and Straugh the debtors acted in bad faith.  The Calder court noted the debtor's bad faith in finding that the unique circumstances of the case allowed denial of the conversion motion.  Calder, 93 B.R. at 740.  The Straugh court held that the Chapter 13 plan was not proposed in good faith. Straugh, 41 B.R. at 759.  While bad faith is a requirement for a finding of extreme circumstances, it is unclear whether the Fifth Circuit would also require additional elements such as exacerbating factors, an unfeasible Chapter 13 plan, or abuse of the bankruptcy process before concluding that exceptional circumstances existed.

Courts in other jurisdictions have developed a variety of tests for when denial of a § 706(a) motion to convert is justified -- for reasons including abuse of the bankruptcy process, bad faith, and futility of the Chapter 13 plan. Instructive is an opinion by the Fourth Circuit where the court refused to abrogate a debtor's right to a § 706(a) conversion on only a showing of subjective bad faith by the debtor. In re Finney, 992 F.2d 43, 45 (4th Cir. 1993). The Fourth Circuit used language similar to that of the Fifth Circuit in Martin in concluding that the debtor's conduct was not sufficiently egregious to warrant the "extreme" action of denying a § 706(a) conversion.

In Martin the Fifth Circuit was not presented with a finding of bad faith, so its holding that the facts were not sufficient to establish extreme circumstances did not explicitly reach the question of whether something more than bad faith was required. Martin, 880 F.2d at 859. However, the language the Fifth Circuit used in Martin indicates that the Fifth Circuit, like the Fourth, would set a high bar for interfering with a debtor's § 706(a) right to convert. Exactly where the Fifth Circuit would set that bar is not clear, however. The Fifth Circuit has twice, in Martin and Pequeno, declined to elaborate on what showing would be sufficient to deny a debtor's § 706(a) right to convert. This court likewise declines to address that question because the record does not show that the bankruptcy court found even bad faith. The bankruptcy

court's September 1, 2005, order cites <u>Martin</u> and states "that the record clearly establishes 'extreme circumstances' as addressed [in <u>Martin</u>]" but makes no findings to support that conclusion.

The bankruptcy court made several factual findings about Neely's actions in bankruptcy. Neely, a veteran of three previous bankruptcies, is an attorney, albeit one suspended from the practice of law. The three previous bankruptcies were apparently contentious affairs, and the first was frustrating for the trustee. Despite this, there was no finding of bad faith in any of the previous three bankruptcies. In his current bankruptcy Neely failed to disclose his position as trustee of his children's trust on his initial schedules. Neely made a post-petition transfer of trust property that he did not disclose. Neely made dubious claims that certain property was the separate property of his wife, but admitted that some of the monies used to purchase the separate property were Neely's. Neely refused to provide the trustee with requested records of this transaction.

While the record shows that Neely was no exemplar of debtor behavior, whether his actions constitute the types of flagrant abuse of the bankruptcy process that occurred in the reported cases denying § 706(a) conversion for bad faith is a question of fact that must be addressed by the bankruptcy court. Although there is evidence in the record that could perhaps support a finding of bad faith by Neely, the bankruptcy court did not decide whether his

-23-

actions constituted bad faith or explain how it established extreme circumstances under Martin.[23]

Because the record does not contain findings of either bad faith, unfeasibility of the Chapter 13, or any other findings that would warrant denial of conversion, the court will remand this case to the bankruptcy court for further findings.  The bankruptcy court should make express findings on whether Neely acted in bad faith, and should articulate any other facts it relies upon to justify denial of Neely's § 706(a) motion to convert.

## V.  Conclusions

Accordingly, the July 12, 2005, and September 1, 2005, orders of the bankruptcy court are **VACATED**.

**SIGNED** at Houston, Texas, on this 22nd day of November, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[23]Another factor in the record that might support denial of conversion was the alleged unfeasibility of Neely's Chapter 13. Although the bankruptcy court recited the evidence presented on this issue, the court made no findings about the feasibility of Neely's plan.

-24-